The STATE of Texas, Appellant,

v.

Royal LANGLEY, Appellee.

No. 13–92–077–CR.

Court of Appeals of Texas,
Corpus Christi.

April 15, 1993.

George J. Filley, III, Dist. Atty., Michael M. Kelly, Asst. Dist. Atty., Victoria, for appellant.

A. Jay Condie, Pachta & Heinold, Victoria, for appellee.

Before NYE, C.J., and SEERDEN and GILBERTO HINOJOSA, JJ.

## OPINION

SEERDEN, Justice.

The State brings this appeal following the trial court's suppression of a juvenile's written statement. By one point of error, the State contends that sixteen-year-old Royal Langley's confession was properly obtained pursuant to a legal detention. We affirm the trial court's order.

On August 20, 1991, after receiving a tip about a burglar with a description similar to Langley, Officer Bennetsen along with two other Victoria police officers, arrived at Langley's home at 2:15 p.m. August 20, 1991. The officers asked Langley if he would come with them to the Victoria Police Station. He agreed, and, while in route to the station, an officer read Langley his Miranda warnings. They arrived at the Victoria police station at 2:40 p.m. Langley was taken to investigation interview room four where he was photographed and fingerprinted. At 2:45 p.m., Bennetsen telephoned the Chief Juvenile Probation Officer for Victoria County, Pam Zacek. Bennetsen told Zacek that Langley wanted to give a statement and he wanted to know if it was okay with the juvenile probation department if he obtained the magistrate's warnings and took Langley's statement at the Victoria Police Station. Bennetsen testified that Zacek gave him the okay to do that and told him then to bring Langley to

the juvenile judge. Zacek explained that she had delegated this task to Bennetsen.

At 4:00 p.m., Bennetsen escorted Langley to Judge Lewis' office for magistration. Langley was then returned to the Victoria Police Station, investigation interview room four, and Bennetsen took Langley's written statement. At 5:15 p.m., Judge Lewis, at the detention hearing, reviewed the statement with Langley, confirmed Langley's understanding of his rights, and witnessed Langley's signature to the statement. Judge Lewis then ordered Langley detained. Zacek first saw Langley at 5:15 p.m. after he executed the confession.

When an officer deems it necessary to take a child into custody the Texas Family Code provides procedures for what must be done when delivering a child to court.

> A person taking a child into custody, without unnecessary delay and without first taking the child elsewhere, shall do one of the following:
>
> . . . .
>
> (2) bring the child before the office or official designated by the juvenile court;
> (3) bring the child to a detention facility designated by the juvenile court; . . . .

Tex.Fam.Code Ann. § 52.02(a) (Vernon 1986).[1]

Following the suppression hearing, the court's order and findings of fact and conclusions of law contained the following finding:

> [T]he area of Langley's detention, the investigation area of the Victoria Police Department, was not a juvenile detention designated area as prescribed by law and that detention of the juvenile in such non-designated area was not authorized by law and is therefore an illegal detention which would taint any confession given by the juvenile subsequent to the detention. Thus, since the detention was unlawful, therefore the validity of the juvenile's consent to make a confession and to waive those rights read to the juvenile at the magistrand and reiterat-

ed prior to the juvenile's execution of the confession is tainted.

■ On appeal, the State maintains that it complied sufficiently with section 52.02(a) when procuring Langley's written statement, and, thus, the statement should not be suppressed. Langley responds 1) that the Victoria Police Station was not designated as a detention facility by the juvenile court nor 2) did Langley appear before the office or official designated by the juvenile court until three hours after the Victoria police first contacted him. Langley asserts that he should have either been taken to a juvenile detention facility or to the office or official designated by juvenile court.

Zacek testified that the Victoria Police Station had not been designated by the juvenile court as a detention facility for children. She explained that the certified detention facility was the women's visitation area in the Victoria County Sheriff's office. The testimony reveals that Langley was taken to this facility only after his detention hearing at 5:00 p.m. The Victoria Police Station was not a designated detention center and therefore the State did not comply with section 52.02(a)(3). *Compare with Beaver v. State*, 824 S.W.2d 701 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd) (no delay taking juvenile immediately to designated detention center and complying with section 52.02(a)).

The State specifically argues that Langley's detention was proper because at 2:45 p.m., Bennetsen telephoned Zacek and during their conversation, Zacek gave him instructions about how to proceed with Langley. The State argues that Zacek, by this telephone conversation, had delegated her responsibilities such that the requirements of section 52.02(a)(2) were met.

According to Zacek, she got a call from Bennetsen indicating that he and Langley were at the police station and that Bennetsen wanted to get a Magistrate's warning done on Langley so he could obtain a statement from him. Zacek stated that Bennetsen indicated to her that they had just arrived at the police station for paperwork

---

1. Section 52.02 was amended by Acts of 1991, 72nd Leg., ch. 495, § 1, effective September 1, 1991. This incident occurred before the 1991 amendment; thus, we apply the former statute.

purposes. We excerpt the following from Zacek's cross-examination testimony:

Zacek: [I gave Bennetsen] permission to go ahead and do the Magistrate's Warning, to line up a judge to conduct the warning, and then to bring him as soon as they got through with the warning, the statement—the signing of the statement, to bring him to me and I would have a detention hearing set up and ready to go.

Langley's Attorney: Did you give Detective Bennetsen permission to question the juvenile prior to being—prior to the juvenile being taken to the magistrate?

Zacek: Other than just finding out general information for paperwork purposes, no.

■ We conclude that the State did not comply with section 52.02(a)(2). We note that the statute requires that the child be brought "before the office or official" designated by the juvenile court. *See* Tex. Fam.Code Ann. § 52.02(a)(2) (Vernon 1986). If it is the officer's intention to comply with section 52.02 by bringing the child before the office or official designated by the juvenile court, to the extent authorized by the juvenile court, the officer may take the child to the police station only to do the paperwork on the case. *See Comer v. State,* 776 S.W.2d 191, 194 n. 2 (Tex.Crim. App.1989). We conclude that the statute does not contemplate a telephone conversation between the arresting officer and the designated official to be equivalent to appearing before the office or official. In reviewing the record, Langley was never "before" the office or the official until after his detention hearing, which concluded over three hours after the police contacted him.

■ We conclude that Zacek's statement that Bennetsen could "do the paperwork" at the Victoria Police Station did not include securing the juvenile's written confession. Title 3 contemplates that once a police officer finds cause to take a child into custody and makes the decision to refer the child to the intake officer or other designated authority, a law enforcement officer relinquishes ultimate control over the investigation. *Id.* at 196. The *Comer* court determined that it was the Legislature's intent that the officer designated by the juvenile court make the initial decision whether to subject a child to custodial interrogation. *Id.* Once the juvenile court appointed officer has made the determination to allow custodial interrogation, that officer may take the statement himself, consistent with section 51.09(b)(1) of the Family Code, at the detention facility, or, may refer the child back to the custody of law enforcement officers to take the statement. *Id.* The *Comer* court determined that this procedure gave effect to the Legislature's intent to allow a juvenile to waive his privilege against self incrimination without consulting an attorney, while preserving the Legislature's intent that involvement of law enforcement officers with juveniles be narrowly circumscribed. *Id.* In the three hours before executing his confession, Langley was never "before" an office or officer appointed by the juvenile court, which is the first procedural step when delivering a child taken into custody to court. It was impossible for Zacek to delegate the investigation to Bennetsen because Langley was never "before" her for her to make that decision. The State did not comply with section 52.02.

We overrule the State's point of error and affirm the trial court's suppression order.