Freeman v. State 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00754-CR







Gregory Joseph Freeman, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT


NO. 94-472-K277, HONORABLE JOHN R. CARTER, JUDGE PRESIDING






 Appellant, Gregory Joseph Freeman, was convicted by a jury of murder. (1) See Tex.
Penal Code Ann. § 19.02 (West 1994). The jury assessed punishment at life imprisonment. On
appeal, appellant contends that evidence was obtained after police illegally detained and frisked
him and should have been suppressed; he also contends that his statement to police was taken in
violation of the Texas Family Code. We will affirm.


FACTUAL AND PROCEDURAL BACKGROUND


 In the early morning hours of April 20, 1994, Bettie Gay Beall was found shot to
death in her truck in Williamson County. According to the medical examiner, the victim was shot
in the face at a range of three to six inches. After conducting an investigation of the scene, police
were able to place the victim at a local grocery store shortly before the murder. As the
investigation continued, they were also able to place appellant at the same grocery store at or near
the time the victim was there.

 Appellant had been attending classes at Round Rock High School since late March
1994. After assaulting and threatening to kill another student, appellant was banned from school. 
On April 20, 1994, however, appellant was allowed to return. 

 Based on his knowledge of appellant's background and presence at the grocery store
where the victim was last seen, Lieutenant Dan Lemay, the investigator assigned to Beall's
homicide, concluded that appellant was a suspect in the murder. At the request of Lieutenant
Lemay, Richard Johnson, an investigator with the Round Rock Police Department, initiated
surveillance of appellant at appellant's home on April 27, 1994.

 On that same day, at approximately 11:00 a.m., Johnson witnessed appellant leave
his home, walk down the street, and enter the front door of a home at which he did not reside. 
Appellant was supposed to be in school. A couple of hours later, a van pulled up to the house and
an older couple went inside. Less than a minute later, appellant left the house from the rear and
began walking toward his home. Appellant appeared nervous as he walked away from the house,
repeatedly looking over his shoulder. Appellant's actions caused Johnson to wonder whether
appellant had a lawful right to be in the home. As appellant walked back toward his home he did
not use the sidewalk, but instead jumped fences and cut through ditches and yards. Johnson
believed appellant was looking for a house to burglarize or was trying to avoid being seen.

 Johnson telephoned Rod Hampton, an investigator with the Round Rock Police
department and department liaison to Round Rock High School who was familiar with appellant's
history, and relayed to him what he had witnessed. Hampton, who had been driving nearby,
located appellant and stopped his car near him. Hampton asked appellant why he was not in
school and why he was jumping fences. Hampton knew appellant was supposed to be in school
and that he was a suspect in Beall's murder.

 Having been told that appellant carried a gun and had threatened the life of another
student, Hampton frisked appellant and discovered a gun under his shirt. (2) Hampton then arrested
appellant for unlawfully carrying a gun; Lieutenant Lemay took him to the juvenile processing
office of the Round Rock Police Department. (3) Afterwards, appellant was taken to a juvenile
detention facility for the night. 

 Early the next day, Lemay went to the juvenile detention facility and had appellant
sign a written explanation of his juvenile rights. Appellant was later taken to the police
department and placed in an interview room authorized for the detention of juveniles. A
magistrate later came to the interview room and informed appellant of his rights under the Texas
Family Code; appellant waived those rights. (4) Appellant then wrote a statement admitting to being
present during Beall's murder and witnessing a Hispanic man shoot the victim. Appellant further
stated that after the murder he picked up the gun and fled the scene. The magistrate warned
appellant that his written statement placed him at the scene of a murder in which he was a suspect
and asked appellant if he wished to destroy his written statement. Appellant refused the
magistrate's offer and proceeded to sign the statement.

 Before trial, appellant filed a motion to suppress evidence, alleging he was detained
and searched in violation of the search and seizure provisions of the state and federal constitutions,
and that the unlawful detention and search led to the discovery of the gun. Following a pretrial
hearing on the motion to suppress, appellant also claimed his written statement was inadmissible. 
The trial court denied both appellant's motion to suppress the gun and his oral objection to the
written statement. A jury later found appellant guilty of murder and assessed punishment at life
imprisonment. Appellant appeals the trial court's denial of his motions to suppress the gun and
his written statement.



DISCUSSION


 In his first point of error, appellant claims that evidence used to convict him was
obtained as a result of an illegal "stop and frisk" because Hampton's detention and search of
appellant violated the Fourth Amendment of the United States Constitution. In a suppression
hearing, the trial court is the sole judge of the credibility of the witnesses and the weight to be
given their testimony. Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). We may
reverse the trial court's decision only upon a showing of an abuse of discretion, i.e., if the
decision is unsupported by the record. Upton v. State, 853 S.W.2d 548, 552 (Tex. Crim. App.
1993). 

 A police officer may briefly stop a suspicious person to determine his identity or
to maintain the status quo momentarily while obtaining more information. Gearing v. State, 685
S.W.2d 326, 327-28 (Tex. Crim. App. 1985). In order to justify even such a brief intrusion,
however, an officer must have specific articulable facts that, in light of his experience and
personal knowledge, together with other inferences from those facts, warrant the intrusion. Terry
v. Ohio, 392 U.S. 1, 21 (1968); Anderson v. State, 701 S.W.2d 868, 873 (Tex. Crim. App.
1985), cert. denied, 479 U.S. 870 (1986); Schwartz v. State, 635 S.W.2d 545, 547 (Tex. Crim.
App. 1982). There must be a reasonable suspicion by the officer that some activity out of the
ordinary is occurring or has occurred, some suggestion to connect the detained person with the
unusual activity, and some indication that the activity is related to a crime. Hoag v. State, 728
S.W.2d 375, 380 (Tex. Crim. App. 1987); Daniels v. State, 718 S.W.2d 702, 705 (Tex. Crim.
App. 1986).

 In the instant case, Hampton had ample information to justify an investigatory
stop: (5) appellant was absent from school, appeared to have been in an elderly couple's home
without their permission, appeared unnecessarily nervous, was trespassing across the yards of
other houses, and had been present at a local grocery store where a murder victim was last seen
alive. Clearly, Hampton had a reasonable articulable suspicion that some activity out of the
ordinary involving appellant was occurring or was about to occur justifying his investigatory
detention of appellant. 

 A frisk, however, is not permitted solely because the detention was justified. 
Maryland v. Buie, 494 U.S. 325, 334 (1990). A police officer must reasonably fear for his safety
or the safety of others before he can conduct a limited search of outer clothing for weapons during
an investigatory detention. See Terry v. Ohio, 392 U.S. 1, 21 (1968); Davis v. State, 829 S.W.2d
218, 221 (Tex. Crim. App. 1992). This reasonableness standard is satisfied by specific and
articulable facts that, if taken with rational inferences, reasonably warrant the further intrusion
of a frisk or "pat-down." Terry, 392 U.S. at 21; Davis v. State, 576 S.W.2d 378, 380 (Tex.
Crim. App. 1979). When an officer is justified in believing a suspect may be armed, the officer
is permitted to take necessary measures to neutralize the potential threat to the officer and others. 
Davis v. State, 794 S.W.2d 123, 125 (Tex. App.Austin 1990, pet. ref'd) (citing Terry, 392 U.S.
at 24); see also Goodwin v. State, 799 S.W.2d 719, 727 (Tex. Crim. App. 1990).

 In the present case, Investigator Hampton testified that he was aware of the
possibility that appellant was carrying a gun (6) and that for his own safety he needed to frisk
appellant. Additionally, Hampton knew that appellant had recently been involved in a shooting
incident and had threatened to kill another student at Round Rock High School. 

 Courts have looked to the totality of the circumstances to determine if frisks
conducted for the safety of a police officer were reasonable. See Brown v. State, 830 S.W.2d
171, 175 (Tex. App.Dallas 1992, pet. ref'd); United States v. Micheletti, 13 F.3d 838, 844 (5th
Cir. 1994). The factors surrounding a "stop and frisk," taken as a whole, may justify an officer's
actions even where one factor alone might not suffice to create a reasonable suspicion. Davis, 829
S.W.2d at 220. In Davis, the court of criminal appeals stated that the fact that the suspect was
wearing a trench coat on a warm day may not have been enough alone to create a reasonable
suspicion for the detention and subsequent frisk. Id. However, taken in context with the specific
dispatch that the officers received and the subject's attempt to flee at the sight of the officers, the
court of criminal appeals found both the stop and initial frisk reasonable. (7) Id. at 220-21.

 We conclude that, even if certain factors alone might not have been sufficient to
support Hampton's frisk of appellant, the circumstances in this case, taken as a whole, support
a finding of reasonableness. See Montano v. State, 843 S.W.2d 579, 582 (Tex. Crim. App.
1992). Considering the whole of Hampton's observations and knowledge, therefore, we cannot
say that the trial court abused its discretion by denying appellant's motion to suppress the evidence
obtained by Hampton's "stop and frisk" of appellant. We overrule point of error one.

 In his second point of error, appellant contends that Hampton's "stop and frisk"
was not legally justified under the Texas Constitution. See Tex. Const. art. I, § 9. However,
there is no material difference in the constitutional language of the state and federal search and
seizure clauses that would require greater protection under the state constitution. See Johnson v.
State, 912 S.W.2d 227, 232 (Tex. Crim. App. 1995); State v. Sailo, 910 S.W.2d 184, 187 n.1
(Tex. App.Fort Worth 1995, pet. ref'd). Therefore, in light of our disposition of point of error
one, we also overrule point of error two.

 In his third point of error, appellant claims that the trial court erred in not
suppressing his written statement to police because it was taken in violation of the Texas Family
Code. Specifically, appellant contends that: (1) the State did not take him before a magistrate
without unreasonable delay and (2) the magistrate did not warn appellant that his prior oral
statements were not admissible. (8) We disagree.

 The Texas Family Code does not require an officer to take a juvenile before a
magistrate without unnecessary delay, and magistrates are statutorily required to warn juveniles
that any statement the juvenile makes may be used in evidence against him. When an officer
deems it necessary to take a child into custody, section 52.02(a) of the Family Code dictates
certain procedures that the officer must follow. (9) State v. Langley, 852 S.W.2d 708, 709 (Tex.
App.Corpus Christi 1993, pet. ref'd). While the procedures in section 52.02(a) must be met
"without unnecessary delay," they do not include a requirement that an officer take a juvenile
before a magistrate without unnecessary delay.

 Even if a juvenile detainee were required to be taken before a magistrate "without
unnecessary delay," the result of the present case would be the same. It is well settled that the
failure to take an adult arrestee before a magistrate in a timely manner will not invalidate a
confession unless there is proof of a causal connection between the delay and the confession. (10) 
Cantu v. State, 842 S.W.2d 667, 679 (Tex. Crim. App. 1992), cert. denied, 509 U.S. 926 (1993);
Boyd v. State, 811 S.W.2d 105 (Tex. Crim. App.), cert. denied, 502 U.S. 971 (1991). The
defendant has the burden to show a causal connection between the confession and the failure to
take him before a magistrate without unreasonable delay. Wagner v. State, 687 S.W.2d 303, 307
(Tex. Crim. App. 1984); Niehouse v. State, 761 S.W.2d 491, 493 (Tex. App.Dallas 1988, no
pet.). In the present case, the record does not show any causal connection between the signing
of appellant's statement and a delay in bringing him before a magistrate. Thus, even if appellant
was required to be taken before a magistrate without undue delay, and even if undue delay was
established, there is no evidence that the delay resulted in appellant's written statement.

 Appellant also claims the Family Code was violated when the magistrate failed to
warn appellant that his oral statements were not admissible. A magistrate is required to warn a
juvenile about several consequences of talking to a peace officer, including "that any statement
that the child makes may be used in evidence against the child." Tex. Fam. Code Ann.
§ 51.09(b)(1)(A) (West 1996) (emphasis added). There is no requirement, however, statutory or
otherwise, that a magistrate warn a juvenile that oral statements may not be used against him. 
To the contrary, the Family Code expressly states that oral statements may be admissible under
particular circumstances. See Tex. Fam. Code Ann. § 51.09(b)(2)-(3) (West 1996) (incriminating
oral statements found to be true and oral statements that are res gestae of delinquent conduct are
admissible). We are not aware of any statutory or case authority that would preclude the
application of section 51.09 to this case. We overrule point of error three.




CONCLUSION


 Having overruled appellant's points of error, we affirm the judgment of conviction.



 J. Woodfin Jones, Justice

Before Justices Powers, Aboussie and Jones

Affirmed

Filed: January 9, 1997

Do Not Publish

1.   Appellant was a juvenile when the State charged him with murder. After a
certification hearing, the juvenile court waived its jurisdiction and ordered that appellant
be tried as an adult. This Court affirmed the trial court's order. See In re G.J.F., No. 3-94-00401-CV (Tex. App.Austin Aug. 16, 1995, writ denied) (not designated for publication).
2.   Ballistics tests later determined that it was the gun used to shoot the victim.
3.   See Tex Fam. Code Ann. § 52.02(a)(2) (West 1996).
4.   See Tex. Fam. Code Ann. § 51.09 (West 1996).
5.   The sum of the information known to law enforcement officers at the time of an
arrest or search by any of the officers involved is to be considered in determining whether
there was sufficient probable cause therefor. Woodward v. State, 668 S.W.2d 337, 344
(Tex. Crim. App. 1982), cert. denied, 469 U.S. 1181 (1984).
6.   Hampton had learned from a school counselor that appellant carried a gun at
school. The counselor obtained the information from a secretary who had provided
credible information to Hampton on previous occasions. The court of criminal appeals
has authorized the use of "hearsay-upon-hearsay" in situations such as this. See Hennessy
v. State, 660 S.W.2d 87, 91 (Tex. Crim. App. 1983); see also Kelley v. State, 807 S.W.2d
810, 814 (Tex. App.Houston [14th Dist.] 1991, pet. ref'd).
7.   The court found that the proper scope of the initial search was exceeded, however,
when the officers opened a matchbox found in the subject's pocket, because it was not
reasonable to believe that the matchbox contained a weapon. Davis, 829 S.W.2d at 221.
8.   On appeal, appellant alleges three additional violations of the Family Code. 
However, because these points were not objected to before the trial court, they were not
preserved for appellate review. See Tex. R. App. P. 52(a); Rezac v. State, 782 S.W.2d 869,
870 (Tex. Crim. App. 1990) (objection stating one legal basis may not be used to support
different legal theory on appeal). 
9.   Section 52.02(a) provides as follows:


A person taking a child into custody, without unnecessary delay and without
first taking the child to any place other than a juvenile processing office
designated under Section 52.025 of this code, shall do one of the following:


(1) release the child to a parent . . . ;


(2) bring the child before the office or official designated by the juvenile court if
there is probable cause to believe that the child engaged in delinquent conduct
or conduct indicating a need for supervision; . . .


(3) bring the child to a detention facility designated by the juvenile court; 


(4) bring the child to a medical facility if the child is believed to suffer from a
serious physical condition or illness that requires prompt treatment; or


(5) dispose of the case [without referral to court] under Section 52.03 of this
code.


Tex. Fam. Code Ann. Sec. 52.02(a) (West 1996) (emphasis added).
10.   See Tex. Code Crim. Proc. Ann. art. 14.06(a) (West Supp. 1997) (requiring officer to
take adult arrestee before magistrate without unnecessary delay).


s points of error, we affirm the judgment of conviction.



 J. Woodfin Jones, Justice

Before Justices Powers, Aboussie and Jones

Affirmed

Filed: January 9, 1997

Do Not Publish

1.   Appellant was a juvenile when the State charged him with murder. After a
certification hearing, the juvenile court waived its jurisdiction and ordered that appellant
be tried as an adult. This Court affirmed the trial court's order. See In re G.J.F., No. 3-94-00401-CV (Tex. App.Austin Aug. 16, 1995, writ denied) (not designated for publication).
2.   Ballistics tests later determined that it was the gun used to shoot the victim.
3.   See Tex Fam. Code Ann. § 52.02(a)(2) (West 1996).
4.  &nbsp