Howard Earl **ROQUEMORE,**
Jr., Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–96–00019–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 13, 2000.

Michael Branisa, Henry L. Burkholder, III, Houston, for Appellee.

John B. Holmes, Eric Kugler, Houston, for State.

Panel consists of Chief Justice SCHNEIDER and Justices WILSON and ANDELL.

## OPINION ON REHEARING

DAVIE WILSON, Justice.

We grant the State's motion for rehearing, withdraw our previous opinion, and substitute the following. We deny appellant's motion for rehearing.

Howard Earl Roquemore, Jr., a juvenile, appeals his conviction for aggravated robbery. A jury found him guilty as an adult and assessed punishment at 11 years in prison. Appellant contends the trial court erred (1) in trying him as an adult without proper waiver of an examining trial and (2) in refusing to suppress his oral confession and all the fruits thereof. We affirm.

### FACTS

Appellant was charged with the aggravated robbery of Cesira Hussain in December 1993. Hussain testified that, while she was stopped at a gas station, appellant approached her, initially offering to fill her car with gasoline. He then stuck a gun in her face and robbed her of her wallet, $90 cash, some jewelry, and credit cards. Before trial, Hussain selected appellant's picture from a photographic array and later identified appellant in court.

Appellant testified and denied committing the robbery. Appellant further testified that, although he volunteered to show the officers the location of the stolen items, he was not involved in the robbery. He stated he knew who committed the robbery—Michael Jones—and also knew where the property was located because

Jones had told him. Appellant also claimed that, during his "oral confession," he did not tell the police he was involved. The officers recovered a photograph of a white family and a Master Card receipt with Hussain's name from a woman in a house next to the area to which appellant directed the officers.

### EXAMINING TRIAL

■ In point of error one, appellant contends the trial court erred in accepting jurisdiction from the juvenile court because counsel invalidly waived appellant's right to an examining trial on the first of the three paragraphs of the petition for certification to stand trial as an adult. Appellant contends counsel could not waive his right to an examining trial in his behalf on this paragraph because the then-applicable provisions of the Family Code required the child and his attorney to waive the right in person, after being admonished. The State contends appellant did not preserve the error.

At the examining trial, the trial court addressed only the second and third paragraphs of the petition for certification regarding the offenses against another victim, but not the first paragraph relating to Hussain. At the outset of the proceedings, the following exchange took place between the trial court and appellant's counsel:

Court: My recollection, Mr. Newman, is that that was your concern, and the reason for setting this for examining trial is those two paragraphs; is that correct?

[Appellant's counsel]: May I see those for a moment, Your Honor?

Court: Sure; I think he's probably got them.

[Appellant's counsel]: That is correct, Your Honor.

At the close of the hearing, the trial court and the prosecutor had the following exchange:

Court: I'll find probable cause in both paragraphs.

[Prosecutor]: Is that clear? Do I have permission to present all three?

Court: Yes, since there was no contest as to Paragraph I.

As the record makes clear, appellant did not object to the trial court's addressing only the second and third paragraphs. He did not preserve error. TEX.R.APP. P. 33.1

We overrule point of error one.

### MOTION TO SUPPRESS

■ In point of error two, appellant contends the trial court erred in admitting Officer Garcia's testimony about appellant's alleged oral confession and Garcia's testimony about the recovered property.[1] In the midst of trial, appellant objected to Garcia's testimony concerning his confession and to admission of testimony about the recovered articles. He moved to suppress the evidence on the basis that the officer took statements from him before taking him to a juvenile processing office, thus violating the requirements of the Family Code. After a hearing outside the presence of the jury, the court denied the motion.

Garcia was the sole witness at the suppression hearing. According to Garcia, after the police received a call from appellant's uncle informing them that appellant was involved in a robbery, Garcia went to appellant's grandparent's home to take appellant into custody. Appellant's uncle and grandmother were present. According to Garcia, after bringing appellant from a back room, the uncle told appellant he (appellant) needed to talk to the police because people were pointing the finger at him and he needed to tell the police what happened so he could "cover" himself.

---

1. It does not appear from the record that the State introduced the property itself, but only

Garcia's testimony about its recovery.

Garcia told appellant he was under arrest for a robbery at the service station, walked appellant to the police car, put him in the car, and read him his *Miranda* rights.[2] According to Garcia, appellant then said he wanted to cooperate. Garcia testified appellant admitted being involved in the robbery and offered to take Garcia to the place where the stolen property had been dumped. Appellant took the officers to a nearby house, where they recovered a credit card receipt bearing Hussain's name and some family pictures. From there they transported him "to juvenile."[3] Garcia testified he spent approximately 20 or 25 minutes with appellant from the time he arrested appellant and read him the *Miranda* warnings until the property was recovered.

We generally review a trial court's findings on a motion to suppress for abuse of discretion. *Cantu v. State,* 817 S.W.2d 74, 77 (Tex.Crim.App.1991). However, when presented with a question of law based on undisputed facts, we apply de novo review. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997) (holding that de novo standard applies to motion to suppress involving mixed questions of law and fact not turning on credibility of witnesses).

Issues concerning a juvenile's confession, although raised in a criminal forum, are controlled by the Family Code. *Smith v. State,* 881 S.W.2d 727, 731 (Tex.

App.—Houston [1st Dist.] 1994, pet. ref'd). The provisions of the Family Code in effect at the time of appellant's arrest that related to release or delivery of the child to the court stated:

(a) A person taking a child into custody, without unnecessary delay and without first taking the child to any place other than a juvenile processing office designated under Section 52.025 of this code, shall do one of the following:

(1) release the child to a parent . . .

(2) bring the child before the office or official designated by the juvenile court . . .

Act of May 26, 1991, 72d Leg., R.S., ch. 495, § 1, 1991 Tex. Gen. Laws 1738, 1738–39 (former Tex. Fam.Code Ann. § 52.02(a), since amended) (current version at Tex. Fam.Code Ann. § 52.02(a) (Vernon Supp. 2000)).

In support of his contention that the trial court should have suppressed the evidence, appellant relies on *Comer v. State,* 776 S.W.2d 191 (Tex.Crim.App.1989). In *Comer,* the Court of Criminal Appeals recognized the conflict between Family Code section 52.02 (the duty of an officer to immediately transport a child in custody to a juvenile processing office) and section 51.09(b) (the right of a child to waive his constitutional rights while in custody and give a statement in response to questioning). *Comer,* 776 S.W.2d at 196.[4] The

---

**2.** *Miranda v. Arizona,* 384 U.S. 436, 444–45, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). The officer's reading of *Miranda* warnings was not a statement designed to illicit an incriminating response and therefore did not constitute an interrogation. *See Proctor v. State,* 748 S.W.2d 1, 2 (Tex.App.—Dallas 1987, no pet.) (questions asked by officer—whether appellant understood *Miranda* warnings, whether appellant could read or write, and whether written statement was correct—not reasonably likely to elicit incriminating response).

**3.** In his trial testimony, Garcia testified that the officers transported appellant to "the juvenile division."

**4.** Under the comparable provision of the Family Code in effect at the time of appellant's confession, a child's oral statement might have been admissible on multiple grounds. For example, it would have been admissible under section 51.09(b)(2), if it were

made orally and the child makes a statement of facts or circumstances that are found to be true, which conduct tends to establish his guilt, such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed.

Act of May 19, 1975, 64th Leg., R.S., ch. 693, § 9, 1975 Tex. Gen. Laws 2154, 2155 (former Tex. Fam.Code Ann. § 51.09(b)(2), since

court harmonized these provisions by holding that the legislature intended that the officer designated by the juvenile court should be the one to make the decision whether to subject a child to custodial interrogation. *Id.* Therefore, the officer must take the child to a juvenile processing center without taking the child anywhere else. *Id.* at 194. In *Comer*, the juvenile was not taken to a juvenile processing office before he went before a magistrate and signed a written confession. *Id.* at 193. Thus, the court held that the written statement, although admissible under section 51.09, was not admissible because the officer did not strictly comply with section 52.02(a). *Id.* at 196.

■ Appellate courts apply the statute literally to determine whether a police officer strictly adheres to section 52.02(a). *See Anthony v. State*, 954 S.W.2d 132, 135 (Tex.App.—San Antonio 1997, no pet.) (because officers did not contact juvenile officer or take required step of processing defendant in area specifically utilized for juveniles, defendant's statement was taken in violation of the Family Code; thus, it was obtained illegally and could not be admitted to support criminal conviction); *accord In re R.R.*, 931 S.W.2d 11, 14 (Tex.App.—Corpus Christi 1996, no writ) (officer took juvenile directly to police station, but because no evidence showed juvenile was detained in office designated the "juvenile processing office," confession was illegally obtained and, therefore, inadmissible). Nonetheless, we note that the reasoning behind the rule is to "avoid the 'taint of criminality' inherent in interrogation conducted at the unsupervised discretion of law enforcement officers." *Comer*, 776 S.W.2d at 196 (quoting Act of May 25, 1973, 63d Leg., R.S., ch. 544, § 1, 1973 Tex. Gen. Laws 1460, 1461 (former Tex. Fam.Code Ann. § 51.01(3)) (current ver-

sion at Tex. Fam.Code Ann. § 51.01(2)(B) (Vernon 1996)).

Relying on *Comer*, appellant contends that only after the requirements of section 52.02 are satisfied can a law enforcement official take a custodial statement. However, this contention overstates the holding of *Comer*. In *Comer*, the court did not preclude taking a custodial statement; rather, the court said "the officer designated by the juvenile court [should] make the initial decision [concerning] *custodial interrogation*." *Comer*, 776 S.W.2d at 196 (emphasis added). Furthermore, in *Melendez v. State*, the San Antonio Court of Appeals said that the Family Code does not prevent the admission of a statement made by a child if the statement does not stem from custodial interrogation: "[E]ven when the suspect is in custody, the statement will still be admissible if it was not elicited by questioning or its counterparts." 873 S.W.2d 723, 725 (Tex.App.—San Antonio 1994, no pet.).

*Comer* envisions both custody and interrogation. The United States Supreme Court defined custodial interrogation in *Rhode Island v. Innis* as extending only "to any words or actions on the part of the police ... that [they] should know are reasonably likely to elicit an incriminating response." 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980). The Court also defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any way." *Thompson v. Keohane*, 516 U.S. 99, 107, 116 S.Ct. 457, 462, 133 L.Ed.2d 383 (1995) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966)).

Although appellant was in custody when he told Officer Garcia he had been involved

amended) (current version at Tex. Fam.Code Ann. § 51.095(a)(2) (Vernon Supp.2000)). Further, it would have been admissible under section 51.09(d)(2), if it did "not stem from custodial interrogation." Act of May 27,

1991, 72nd Leg., R.S., ch. 593, § 1, 1991 Tex. Gen. Laws 2129, 2130 (former Tex. Fam.Code Ann. § 51.09(d)(2), since amended)(current version at Tex. Fam.Code Ann. § 51.095(b)(1) (Vernon Supp.2000)).

in the robbery, wanted to cooperate, and would take the officers to the location of the stolen items, there was nothing introduced at the suppression hearing to suggest these statements were a result of any interrogation. Garcia testified, without contradiction, that appellant's uncle had told appellant to talk to the police. Garcia also testified appellant stated that he (appellant) wanted to cooperate and confessed to the crimes right after he was given his *Miranda* warnings. Appellant then told the officers that he could not tell them the address where the stolen property was located, but he could take them to the location. These assertions. did not result from custodial interrogation or from the fact of custody itself; rather, they sprang from appellant's own initiative. We conclude that section 52.02(a) does not operate to exclude Garcia's testimony concerning the confession and offer to take the officers to the stolen property.

■ We turn now to Garcia's testimony about recovering the stolen property. When, instead of taking appellant directly to a juvenile processing office, Garcia allowed appellant to take the officers to the place where the stolen property was hidden, Garcia arguably violated a literal and rigid interpretation of section 52.02(a). Under the circumstances presented here, however, we conclude that, even if the officer was in violation of section 52.02(a), such a violation as purportedly occurred here does not warrant an automatic suppression of Garcia's testimony about the stolen property.

■ We read *Comer* as limited to its facts: a written confession obtained by detaining the juvenile for approximately three hours before compliance with section 52.02 rendering the written statement inadmissible. The court of criminal appeals did not rule that the exclusionary rule should be applied to every situation without considering the degree to which police conduct or, as in this case, merely the benign control over a child, is material to the making of inculpatory statements by a

defendant. The exclusionary rule is applicable to those violations that are related to the purpose of the exclusionary rule—deterrence of unlawful police activity and judicial integrity. *Brown v. Illinois*, 422 U.S. 590, 599, 95 S.Ct. 2254, 2259, 45 L.Ed.2d 416 (1975). In this case, we conclude that the conduct of the police in no way caused appellant to make the statements. Instead, the police followed appellant's directions—appellant's voluntary statements—when they went to the location of the property. These facts alone distinguish *Comer*.

■ The purpose of the section 52.02(a) restrictions is to reduce an officer's impact on a juvenile in custody. *Le v. State*, 993 S.W.2d 650, 655 (Tex.Crim.App.1999). There is nothing in the record to indicate that, in following appellant's directions to the stolen property, the officers were taking appellant to a place where they had an improper impact on him. When appellant voluntarily directed the officers to a place of his selection, the actions of the officers did not implicate the section 52.02(a) restrictions. We hold that the juvenile was brought to the juvenile processing office without unnecessary delay, notwithstanding the detour.

Accordingly, we conclude that the questionable illegality of the detour does not warrant suppression of Garcia's testimony about discovery of the stolen property. It also does not separately warrant suppression of appellant's statements.

The questionable illegality of the detour also does not invalidate the previously obtained statements. *Cf. Laird v. State*, 933 S.W.2d 707, 714 (Tex.App.—Houston [14th Dist.] 1996, pet. ref'd) (when juvenile lawfully detained while spontaneously uttering incriminating remarks, court need not decide whether subsequent detention unlawful). We conclude the trial court did not err in permitting Garcia's testimony about appellant's statements and about recovery of the stolen property.

We overrule point of error two.

We affirm the judgment of the trial court.