The STATE of Texas, Appellant,

v.

Lionel SIMPSON, Appellee.

No. 12–00–00235–CR.

Court of Appeals of Texas,
Tyler.

Dec. 29, 2000.

David Cervantes, for appellant.

William House, Jr., William M. House, Jr., Palestine, for appellee.

Panel consisted of DAVIS, C.J., HADDEN, J., and WORTHEN, J.

DAVIS, Chief Justice.

In a single issue, the State of Texas ("State"), appeals the trial court's order suppressing the written confession of Appellee, Lionel Simpson ("Simpson"), a 15 year old juvenile charged with the capital murder of Geraldine Davidson. The trial court held that the written statement was illegally obtained because of the failure of law enforcement officers to promptly notify Simpson's parent of his detention in violation of Texas Family Code section 52.02(b). We affirm.

## BACKGROUND

Simpson and his brother, Danielle, were arrested at 11:00 a.m. on Friday, January 28, 2000, in connection with an investigation of the murder of an elderly retired school teacher, Geraldine Davidson. Prior to being interviewed, law enforcement investigators took Simpson before Justice of the Peace James Todd. At 12:25 p.m. Judge Todd gave Simpson a comprehensive Magistrates Juvenile Warning pursuant to Family Code Section 51.095.[1] Judge Todd testified that Simpson understood his rights and voluntarily relinquished them including a waiver of his right to an attorney.

Simpson was then interviewed by Texas Ranger Rudy Flores. Flores testified Simpson was relaxed and cooperative as he answered questions. He was provided lunch, food, soda pop and restroom breaks during the interview. The interview, however, lasted for seven and one-half hours. During the interview Simpson gave a written statement in his own handwriting implicating himself in the murder. Before signing the statement, Simpson was then taken back before Judge Todd.

Judge Todd gave Simpson a second Magistrate's Juvenile Warning[2] at approximately 8:15 p.m. This was again outside the presence of the law enforcement officers. Judge Todd then reviewed Simpson's written statement and advised him he was under no obligation to make or sign the statement. Simpson nevertheless proceeded to sign the statement initialing each page. Simpson remained in the juvenile detention center through the weekend.

From the time of his arrest on Friday January 28, 2000, until Sunday evening, January 30, 2000, neither Simpson's mother nor any other parent, guardian, or custodian was notified of Simpson's arrest and detention. His mother, Brenda Simpson, found out Sunday night that Simpson was in the Juvenile Detention Center. A police officer came to her house to serve her with a juvenile petition and told her to be in court for Simpson at 9:00 a.m. on Monday, January 29, 2000.

Simpson filed a motion to suppress his written statement alleging among other grounds that the law enforcement officials had violated sections 52.02(a) and (b) of the Texas Family Code. After a hearing on the motion to suppress, the trial court held

1. Judge Todd read and explained the following rights and warnings to Simpson:

   1. You may remain silent and not make any statement at all;
   2. Any statement that you make may be used in evidence against you;
   3. You have the right to an attorney;
   4. You have the right to have an attorney present to advise you before or during questioning;
   Footnote continued.
   5. If you are unable to employ an attorney, you have the right to have an attorney appointed for you;
   6. You have the right to have the attorney counsel you before or during any interviews with peace officers or attorneys representing the state; and
   7. You have the right to terminate the interview at any time.

   8. Do you understand these rights?
   9. Do you have any questions?

2. The second warning was as follows:
   1. You may remain silent and not make any statement;
   2. Any statement that you make may be used in evidence against you;
   3. You have the right to an attorney;
   4. You have the right to have an attorney present to advise you before or during questioning;
   5. If you are unable to employ an attorney, you have the right to have an attorney appointed for you;
   6. You have the right to have the attorney counsel you before or during any interviews with peace officers or attorneys representing the state; and
   7. You have the right to terminate the interview at any time.

that while the State had complied with section 52.02(a) requiring the juvenile be taken to a juvenile processing office without delay, it had failed to comply with the parental notification requirements of section 52.02(b). The trial court ordered Simpson's written statement suppressed and inadmissible in his trial.

### PARENTAL NOTIFICATION

The State brings this interlocutory appeal pursuant to Article 44 .01(a)(5) of the Texas Code of Criminal Procedure. The sole issue on appeal is whether the failure to comply with section 52.02(b) of the Texas Family Code requires suppression of Simpson's written statement.

■ The standard of review in this case is *de novo*. While the standard of review on a motion to suppress is normally abuse of discretion, *Cantu v. State*, 817 S.W.2d 74, 77 (Tex.Crim.App.1991), where, as here, we have a question of law based on undisputed facts, a *de novo* standard is applied. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997).

Section 52.02(b) provides that "A person taking a child into custody **shall promptly** give notice of the reason for taking the child into custody; to ... the child's parent, guardian, or custodian ...." (emphasis added). TEX.FAM.CODE ANN. § 52.02(b) (Vernon 1999). The State admits that the law enforcement officials in this case failed to promptly notify Simpson's parent that he was in custody thus violating section 52.02(b). The State argues, however, that a violation of section 52.02(b) should not necessarily result in suppression of a written statement.

The State argues that *Comer v. State*, 776 S.W.2d 191 (Tex.Crim.App.1989) requires a two part test: first, whether there was a violation of the Family Code, and second, whether the taint of illegality had dissipated by the time the confession was taken. In *Comer*, the court also stated that "an otherwise valid confession following a detention that is illegal as a matter of state law will not be excludable under article 38.23, ... where it is determined that the taint of the illegality has dissipated by the time the confession was taken." *Comer*, 776 S.W.2d at 196, *citing Bell v. State*, 724 S.W.2d 780, 787 (Tex.Crim.App.1986), *cert. denied*, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987).

■ The attenuation of taint analysis has been held to require a four part inquiry: "(1) the giving of *Miranda* warnings, (2) the temporal proximity of the arrest and the confession, (3) the presence of intervening circumstances, and (4) the purpose and flagrancy of the official misconduct." *Bell*, 724 S.W.2d at 788; *accord Dowthitt v. State*, 931 S.W.2d 244 (Tex. Crim.App.1996). The purpose of this four-part analysis is to determine whether the causal chain between an illegal arrest and the statement at issue has been broken so that the statements are shown to be the product of free will. *Bell*, 724 S.W.2d at 788. The State argues that these four prongs were satisfied and the confession should not have been suppressed. We disagree.

■ Although Simpson was given extensive *Miranda* warnings satisfying the first inquiry, for the reasons stated below, application of the latter three inquiries does not lead us to conclude that the taint was eliminated in this case. Moreover, unsatisfactory responses to the last three inquiries are not cured by compliance with the first. *Maixner v. State*, 753 S.W.2d 151, 156 (Tex.Crim.App.1988). Further, it must be noted that *Bell*, which first applied the four-part inquiry in Texas, and *Dowthitt* were both warrantless arrest cases. In those cases the illegality was the warrantless arrest. Thus, the time lapse

and intervening circumstances (inquires 2 and 3) between the illegal arrest and the confession could well have the effect of eliminating the taint of the illegal arrest. However, we find it difficult to see how a lapse of time or intervening circumstances could eliminate the taint of the illegality in a parental notification case. Here the admitted violation of failing to notify Simpson's parents pursuant to section 52.02(b) was the illegality. If anything, the time lapse and intervening circumstances which occurred over the seven to eight hour time period between the arrest and the confession only aggravate the taint of the illegality. The duty of parental notification is an ongoing duty which does not dissipate with the passage of time or intervening circumstances. Law enforcement officials did not comply with section 52.02(b) for over fifty-eight hours after Simpson's arrest. No explanation for this extremely lengthy delay was offered by the State.

Under the fourth inquiry of whether the violation was purposeful or flagrant, we cannot say whether the delay and failure to notify Simpson's parent was purposeful, but it would seem that the violation was flagrant in that there is no evidence that law enforcement officials even attempted to contact his parents for over two days following his arrest.

If section 52.02(b), as adopted by the legislature, is to have any meaning it must be followed. The legislature has chosen to give juveniles certain additional protections including prompt notification of their parents when they are arrested. Simpson did not receive the benefit of this protection. No one can say what would have happened had the State promptly notified his mother, but having failed to do so the statute was obviously violated, and in applying *Comer* we cannot say the taint of

the violation was eliminated in the written statement.

Two other courts of appeal have reached this same conclusion in applying *Comer* to section 52.02(b). *See In re. C.R.*, 995 S.W.2d 778 (Tex.App.—Austin 1999, pet. denied); and *Gonzales v. State*, 9 S.W.3d 267 (Tex.App.—Houston [1st Dist.] 1999, pet. granted); but *see Roquemore v. State*, 11 S.W.3d 395 (Tex.App.—Houston [1st Dist.] 2000, pet. granted). Moreover, the Texas Court of Criminal Appeals has recently reaffirmed its commitment to the Legislature's mandatory protective provisions regarding the arrest of juveniles:

> Today we reaffirm our decision in *Comer*. The Legislature has set forth very specific actions which a law enforcement officer must take when arresting a juvenile. We are aware of the disturbing increase in juvenile crime in our state, and we are sympathetic to law enforcement's efforts to deal with violent juvenile offenders. Nevertheless, we must not ignore the Legislature's mandatory provisions regarding the arrest of juveniles. We informed the citizenry, a decade ago in a unanimous opinion, of the Legislature's clear intent to reduce an officer's impact on a juvenile in custody. Today we remind police officers of the Family Code's strict requirements.

*Baptist Vie Le v. State*, 993 S.W.2d 650, 655 (Tex.Crim.App.1999). This case must unfortunately be yet another reminder that neither we nor the police can ignore the Legislature's mandatory provisions for parental notification in the arrest of juveniles.

We hold the trial court did not err in suppressing Simpson's written confession because of the failure of law enforcement officials to promptly notify his parent of his detention in violation of Family Code section 52.02(b). The State's sole issue is

overruled, and the trial court's Order Suppressing the Confession is affirmed.