Affirmed and Memorandum Opinion filed January 23, 2007








Affirmed and Memorandum Opinion filed January 23, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00942-CR

____________

 

FRANCO GAMBOA, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 208th
Judicial District Court

Harris County, Texas

Trial Court Cause No. 986619

 



 

M E M O R A N D U M   O P I N I O N

Appealing his conviction for murder, appellant Franco
Gamboa challenges the trial court=s ruling on his
motion to suppress as well as the legal and factual sufficiency of the
evidence. We affirm. 

I.  Factual and Procedural
Background 








On the night of December 26, 2003, Fausto Montes, Clint
Drabeck, and Jason and Ashley Olivas went to a barbeque at Kenneth Wood=s house in
southwest Houston.  Around 11:30 p.m., Wood saw a vehicle pass by his home for
the second time that night.  The occupants of the vehicle appeared to look very
closely at Wood=s guests.  Shortly thereafter, Wood heard
several gunshots coming from the direction of the vehicle and immediately got
his gun and returned fire.  The vehicle instantly drove away.  Wood and his
guests discovered that in the fray Montes had been shot.

The party guests went inside the house to call for help. 
In the meantime, Ashley Olivas unsuccessfully attempted to revive Montes
through cardio-pulmonary resuscitation.  By the time the ambulance arrived a
short time later, Montes was dead. 

Just after midnight, Alaine Edwards, at her home in the
same area of far southwest Houston, heard her doorbell ring.  The man at the
door, later identified as appellant, asked if he could use her telephone. 
Edwards refused the request, but stated that she would call someone for him if
necessary.  Although appellant declined her offer, he lingered outside her
home.  After hearing voices outside the door, Edwards placed a 9-1-1call.  She
then summoned her neighbor, John Nash, who was the head of her local ANeighborhood Watch@ program, to come
and investigate.  Shortly thereafter, Edwards saw Nash approach appellant
several houses down the street.  After a brief exchange, Nash and appellant
parted ways.  Nash, however, remained suspicious and decided to look for
appellant again. 








Meanwhile, Officer James Welborn with the Houston Police
Department, who was on patrol in the area, was dispatched to Wood=s residence
shortly after midnight.  Officer Welborn secured the scene until homicide
detective Sergeant James Ramsey and his partner, Sergeant Edward Gonzalez,
arrived shortly before 2:00 a.m.  Sergeant Ramsey learned that the suspects= vehicle had been
located by another police officer, Pamela Tyler, a few miles away.  Officer
Tyler had discovered a grayish-colored vehicle parked on the wrong side of the
street, resting partially in an open field and partially on the sidewalk.  The
vehicle had significant damage, including several broken windows.  When Officer
Tyler searched the vehicle, she found a sawed-off shotgun in the backseat,
containing a shell that had been fired recently.  Tow truck drivers informed
Officer Tyler that a man had walked away from the vehicle carrying a gun.
Shortly thereafter, the same man began walking toward the abandoned vehicle. 
Officer Tyler commanded him to the ground but soon discovered that the  man was
Nash.  He suggested that Officer Tyler look for two to three Hispanic males and
provided detailed descriptions of them to the officer.

While Officer Tyler continued pursuit, Nash and another
neighbor, Edward Williams, searched the neighborhood for the man (appellant)
Alaine Edwards had sighted.  Williams found him hiding in a large trash can in
Edwards=s yard.  Holding
him at gunpoint until the police arrived, Williams told appellant, Aif you move, I
will shoot you.@ Around 1:30 a.m., Officer Ciro Pena, who
had been dispatched to the area to assist Officer Tyler, found Williams holding
appellant at gunpoint and took appellant into custody.  Williams informed
Officer Pena that two other individuals had run further down the street. 
Officer Pena, who was on foot, briefly handcuffed appellant to a light pole
while he searched the area for other possible suspects.  About that time,
Houston Police Officer Dubose arrived at the scene in a patrol car, and Officer
Pena placed appellant in the back seat.  After taking custody of appellant,
Officer Dubose unsuccessfully attempted to pursue another vehicle sighted by
Officer Pena, but returned shortly thereafter.  Before long, two other suspects
were apprehended and also placed in Office Dubose=s patrol car.   

Appellant was separated from the other suspects and placed
in the back seat of Officer Pena=s patrol car.  
Appellant admitted that the shotgun found in the vehicle belonged to him.  A
test of appellant=s hands revealed fresh gunshot residue. 
Officer Gordon Oran, assigned to canine duty with the Houston Police
Department, was also dispatched to the area to search for suspects and
weapons.  Officer Oran=s dog located a handgun in the bushes near
where appellant was found.   








While all of this activity was taking place, Sergeant
Ramsey, still at Wood=s residence, asked the party guests if
they could identify the vehicle involved in the drive-by shooting.   Ashley
Olivas was taken to the vehicle=s location and positively identified the
vehicle as the one involved in the drive-by shooting.  By the time Sergeant
Ramsey arrived with Olivas, three suspects had been apprehendedCappellant, Raymond
Duran, and Jose Aguilera.  Sergeant Ramsey spoke to Duran and learned that he
had been the driver of the vehicle.  Duran consented to a search of the vehicle
and offered a statement.

Immediately after speaking to Duran, around 3:00 a.m.,
Sergeant Ramsey began interrogating appellant.  Appellant was very cooperative
and openly offered information about what had transpired, such as the placement
of the individuals in the vehicle at the time of the shooting.  During this
brief talk, Sergeant Ramsey learned that appellant was only sixteen years old,
and immediately terminated the discussion.  Sergeant Ramsey next questioned
Jose Aguilera, who was uncooperative and refused to offer a statement.  
However, a test of Aguilera=s hands revealed the presence of gunshot
residue.

After securing the scene, Sergeant Ramsey immediately drove
appellant to Magistrate Judge Villagomez=s chambers, which
functioned as a juvenile processing office.  At 4:40 a.m., Judge Villagomez
read appellant his rights in both English and Spanish.  After the warnings, 
Sergeant Ramsey transported appellant to the main police station at 1200
Travis, in downtown Houston.  Appellant was placed in interview room number 6
on floor 6, which also was designated as a juvenile office.  Sergeant Ramsey
interviewed appellant from 5:14 a.m. until 5:36 a.m..  During this brief
interview, appellant admitted that he fired one round from a double-barrel
shotgun and that Aguilera had fired at least two or three rounds from a
handgun.  Immediately after the interview, Sergeant Ramsey transported
appellant to the juvenile detention center in southeast Houston. 

Appellant was charged with the felony offense of murder. 
He  pleaded Anot guilty@  and sought to
suppress the audio-taped statements.  The trial court refused to suppress the
statements.  A jury found appellant guilty as charged, and assessed punishment
at twenty-three years= confinement in the Institutional Division
of the Texas Department of Criminal Justice.

 








III. Issues
and Analysis

A.      Did the
trial court err in denying the motion to suppress appellant=s audiotape
recorded in-custody statement? 

In his first issue, appellant contends the trial court
erred in denying his motion to suppress.  More specifically, appellant, a
juvenile at the time of the offense, contends that Sergeant Ramsey failed to
comply with section 52.02(a) of the Texas Family Code by failing to take him
before an Aofficial@ designated by the
juvenile court.  The State responds that appellant waived this complaint
because he failed to argue, during the motion-to-suppress hearing, that Judge
Villagomez was not an official designated by the juvenile board.  In the
alternative, the State contends that the statute does not require that the
juvenile be taken before an official designated by the juvenile board, but only
that the juvenile be taken before the office or an official designated
by the juvenile board.  See  Tex.
Fam. Code Ann. ' 52.02(a)(2) (Vernon Supp. 2006).

As a threshold matter, we must determine whether appellant
preserved this issue for our review.  During the motion to suppress hearing,
appellant made the following arguments: 

Counsel:     Very briefly, I believe that
the manner in which Mr. Gamboa was picked up upon his arrest sometime after
midnight C he was taken into custody by a
police officer.  He is handcuffed around the light pole, I believe, for some
period of time.  My client says 10, 15 minutes.  The officer says maybe 30
seconds, of course.

The judge is C it appears that 52.02(a) has been
violated in that no effort was made to take, first of all, to notify the
guardian or parent of Franco Gamboa.  It was not until 7:25 or 7:15 in the
morning of the 27th, some six, seven hours after he had been detained. 

He was not taken immediately as the code requires, that without
unnecessary delay, and he has beenChe has to be taken to a juvenile processing facility.  He
was detained.  He was taken to the scene of where the accident occurred on Orem
Street.  He was there for a while, sitting in the back of the vehicle, a police
officer=s unit, later on transferred from
that unit, started to be interview by Officer Ramsey.








Once he realized that he was dealing with a juvenile, according to his
testimony, he stopped asking him questions, and soon thereafter, not
immediately, but soon thereafter took him to the magistrate.  He still had to
tie ends at the scene that he was in charge with on Orem Street.  And it was
sometime, sometime after that that he proceeded to take him to the magistrate,
I believe Judge Villagomez, at 49 San Jacinto. 

No effort was made to make contact with parents or guardians or anyone
at that has custody of Franco Gamboa at that time.  And according to 52.02 of
the Family Code, it states very clearly that without unnecessary delay and
without first taking the child to any place other than a juvenile processing
officer, designated under Section 52.05, they must do the following then. That
section enumerates six things that the officers must do. None of which were
done in this case.

But instead Mr. Gamboa is driven around by several officers. We know
Officer Pena and Ramsey are involved.  And we also know of another officer that
also transported him out there at the scene at the, at those hours of the early
morning. 

We feel, your Honor, that 52.02 has been violated; and as a result, any
confession obtained of the violation we feel should be suppressed. Thank you,
your Honor. 

. . .     

Counsel:     Your Honor, going back to Comer
v. State and other cases that had resulted from that decision, again, very
strictly applying 52.02(a), the Court in Comer v. State, about ten years ago,
in explaining the language of 52.02 dictated what an officer must do, quote,
without unnecessary delay when he takes a child into custody. And in that case
the Court concluded that the clear intent of the statutory scheme as a whole
from this point on is that the decision as to whether further detention is
called for is to be made not by law enforcement personal but by the intake or
other authority, other authorized officer, of the court. 

It appears that the legislature intended to restrict involvement of law
enforcement officers to initial seizure and prompt release of commitment of the
juvenile offender. 

. . .








I submit to the Court that through the testimony of the officers that
testified and also the witnesses that Mr. Gamboa presented there is certainly a
violation of the sections of the Family Code that we have alluded to. And for
those reasons we ask this Court to suppress the confession or statement that
was obtained from Mr. Gamboa while he was in custody, and his rights under the
Family Code were being violated. 

The Court: That will be
denied.           

Within the above exchange, appellant does not make the complaint
he now makes on appeal C  that Judge Villagomez was not an
official designated by the juvenile board.  When the appellate complaint fails
to comport with the trial objection, nothing is preserved for review.  See
Swain v. State, 181 S.W.3d 359, 367 (Tex. Crim. App. 2005).  Because
appellant=s complaint on appeal does not comport with the
arguments made in the trial court, it is waived.  See Pham v. State, 125
S.W.3d 622, 629 (Tex. App.CHouston [1st Dist.] 2003) (concluding that
error was not preserved when defendant failed to allude to the failure of the
police to take him promptly to particular room at police station specifically
designated as juvenile processing office upon arrest for murder), aff=d, 175 S.W.3d 767
(Tex. Crim. App. 2005).  However, even if appellant had not failed to preserve
error, we would find no merit in his first issue.

Appellant=s complaint is that once Sergeant Ramsey
decided to take him into custody, he was required to cease any further
investigation of the case, and immediately take him to an official designated
by the juvenile board.  Appellant contends that because the record fails to
show that Judge Villagomez was an Aofficial@ designated by the
juvenile board, appellant=s rights were violated, and, therefore,
the oral statements he made to Sergeant Ramsey should have been suppressed. 
Appellant=s interpretation of the statute is incorrect. 








Appellant relies on Comer v. State, 776 S.W.2d 191
(Tex. Crim. App. 1989), in which the Court of Criminal Appeals reviewed whether
a written statement by a juvenile should be suppressed when section 52.02(a)
had not been followed but the statement appeared to be admissible under section
51.09(b)(1).  Id. at 194B95.  In that case, three
hours had elapsed from the time the juvenile was taken into custody until he
was transported to a juvenile detention center.  Id.  In the interval,
the juvenile was taken to a justice of the peace from whom he received the
appropriate Family Code admonishments and then made a full confession in
writing before the justice of the peace.  Id.  On review, the Court of
Criminal Appeals concluded that the three‑hour time‑period was an
unnecessary delay and that the written statement was inadmissible,
notwithstanding section 51.09(b)(1).  Comer, 776 S.W.2d at 196.[1]  
The high court stated that Title Three of the Family Code contained competing
interests: to protect Athe public from the unlawful acts of
children while concomitantly insulating those children from the stigma of criminality
and providing for their welfare and edification.@  Id. at
193.   The Comer court then held that, A[W]here the
officer deems it necessary to take the child into custody, section 52.02(a) . .
. dictates what he must then do >without
unnecessary delay and without first taking the child anywhere else.= @   Id. at
194.  Because section 52.02(a)=s provisions were not followed, and the
taint of illegality had not dissipated, there was a violation of article 38.23
of the Code of Criminal Procedure, and the court remanded the case for a harm
analysis.  Id. at 196‑97.  Appellant does not complain that his
rights were violated because there was an Aunnecessary delay@ in taking him to
a juvenile processing office or an official designated by the juvenile board,
only that Judge Villagomez was not an official designated by the juvenile
board.  

Subject to an exception that does not apply to the facts of
this case, under section 52.02(a), Aa person taking a
child into custody, without unnecessary delay and without first taking the
child to any place other than a juvenile processing office designated under
Section 52.025,@ shall do one of the following:

(1)     release the child to a parent, guardian,
custodian of the child, or other responsible adult upon that person=s promise to bring the child before
the juvenile court as requested by the court; 

(2)     bring the child before the office or an
official designated by the juvenile board if there is probable cause to
believe that the child engaged in delinquent conduct, conduct indicating a need
for supervision, or conduct that violates a condition of probation imposed by
the juvenile court;

(3)     bring the child to a detention facility
designated by the juvenile board; 








(4)     bring the child to a secure detention
facility as provided by Section 51.12 (j); 

(5)     bring the medical facility if the child is believed
to suffer from a serious  physical condition or illness that requires prompt
treatment; or

(6)     dispose of
the case under Section 52.03.[2]








Tex. Fam. Code Ann. ' 52.02(a).
(emphasis added). The plain language of this section does not require that the
child must be taken before an official designated by the juvenile board, but
rather that he be brought before the office or an official designated by
the juvenile board.           The officers complied with the plain
language of section 52.02(a).  Because Sergeant Ramsey was the only homicide
detective at the scene, he could not leave with appellant until the scene was
secure, which took thirty to forty minutes.  As soon as Sergeant Ramsey had ensured
that the other homicide officers were on their way to collect evidence and
process the scene, he took appellant to Judge Villagomez=s chambers, which
functioned as a juvenile processing office.  While there, appellant was given
his warnings.  Following these warnings, appellant was taken to another
designated juvenile processing office, where his statement was taken. 
Immediately thereafter, appellant was transported to a juvenile detention
center. Based on this evidence, we conclude that it was not necessary that
Judge Villagomez be an official designated by the juvenile board.  Cf.
Baptist Vie Le v. State, 993 S.W.2d 650, 655 (Tex. Crim. App. 1999)
(concluding that juvenile=s statement should have been suppressed
because there was nothing in the record to support that the homicide division
at the Houston Police Department was an office designated by the juvenile court
under section 52.02(a)).[3] 
Because appellant was taken to a juvenile processing office within the meaning
of the statute, it is not necessary that Judge Villagomez was an official
designated by the juvenile board, and, therefore, appellant=s rights under
section 52.02(a) were not violated.  Accordingly, we overrule appellant=s first issue.

B.      Is the evidence legally and
factually sufficient to support appellant=s conviction for murder? 

Under his remaining issues, appellant essentially contends
that the evidence is legally and factually insufficient to support his
conviction for murder as a principal actor or as a party to the offense.[4]








When evaluating the legal sufficiency of the evidence, we
view the evidence in the light most favorable to the verdict and determine
whether any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S.
307, 319, 99 S.Ct. 2781, 2789 (1979); Drichas v. State, 175 S.W.3d 795,
798 (Tex. Crim. App. 2005).  The standard is the same for both direct and
circumstantial evidence cases.  King v. State, 895 S.W.2d 701, 703 (Tex.
Crim. App .1995).  We do not resolve any conflict of fact, weigh any evidence,
or evaluate the credibility of any witnesses.  See Adelman v. State, 828
S.W.2d 418, 421 (Tex. Crim. App. 1992).  We review all of the evidence admitted
at trial, and resolve any inconsistencies in the evidence in favor of the
verdict.  Id.

When evaluating a challenge to the factual sufficiency of
the evidence, we view all the evidence in a neutral light and inquire whether
we are able to say, with some objective basis in the record, that a conviction
is Aclearly wrong@ or Amanifestly unjust@ because the great
weight and preponderance of the evidence contradicts the jury=s verdict.  Watson
v. State, 204 S.W.3d 404, 414B17 (Tex. Crim.
App. 2006).  It is not enough that this court harbor a subjective level of
reasonable doubt to overturn a conviction that is founded on legally sufficient
evidence, and this court cannot declare that a conflict in the evidence
justifies a new trial simply because it disagrees with the jury=s resolution of
that conflict.  See id. at 417.  If this court determines that the
evidence is factually insufficient, it must explain in exactly what way it
perceives the conflicting evidence greatly to preponderate against conviction. 
Id. at 414B17.  Our evaluation should not intrude
upon the fact finder=s role as the sole judge of the weight and
credibility given to any witness=s testimony.  See
id;  Fuentes v. State, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). 
In conducting a factual-sufficiency review, we must discuss the evidence
appellant claims is most important in allegedly undermining the jury=s verdict.  Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

The indictment in this case alleged the following: 

The duly organized Grand Jury of Harris County, Texas, presents in the
District Court of Harris County, Texas, that in Harris County, Texas, FRANCO
GAMBOA, hereinafter styled the Defendant, heretofore on or about DECEMBER 27,
2003, did then and there unlawfully, intentionally and knowingly cause the
death of FAUSTO MONTES, hereinafter called the Complainant, by SHOOTING THE
COMPLAINANT WITH A DEADLY WEAPON, NAMELY A FIREARM. 








It is further presented that in
Harris County, Texas, FRANCO GAMBOA, hereinafter styled the Defendant,
heretofore on or about DECEMBER 27, 2003, did then and there unlawfully intend
to cause serious bodily injury to FAUSTO MONTES, hereinafter called the
Complainant, and did cause the death of the Complainant by intentionally and
knowingly committing an act clearly dangerous to human life, namely BY SHOOTING
THE COMPLAINANT WITH A DEADLY WEAPON, NAMELY A FIREARM. 

To sustain a guilty
verdict, the State must prove the elements of the offense as set forth in the
jury charge.  Rabbani v. State, 847 S.W.2d 555, 558 (Tex. Crim. App.
1992).  The charge in this case authorized conviction on two theories C law of the parties or direct
liability:

 

The defendant, Franco Gamboa, stands charged by indictment with the
offense of murder, alleged to have been committed on or about the 27th day of
December, 2003, in Harris County, Texas. The defendant has pleaded not guilty. 

Our law provides that a person commits the offense of murder if he
intentionally or knowingly causes the death of an individual; or if he intends
to cause serious bodily injury and intentionally or knowingly commits an act
clearly dangerous to human life that causes the death of an individual. 

. . .

All persons are parties to an offense who are guilty of acting together
in the commission of the offense. A person is criminally responsible as a party
to an offense if the offense is committed by his own conduct, by the conduct of
another for which he is criminally responsible or both.

A person is criminally responsible for an offense committed by the
conduct of another if, acting with intent to promote or assist the commission
of the offense, he solicits, encourages, directs, aids, or attempts to aid the
other person to commit the offense. Mere presence alone will not constitute one
party to an offense. 

If, in the attempt to carry out a conspiracy to commit one felony,
another  felony is committed by one of the conspirators, all conspirators are
guilty of the felony actually committed, though having no intent to commit it,
if the offense was committed in furtherance of the unlawful purpose and was one
that should have been anticipated as a result of the carrying out of the
conspiracy. 








When, as in this case, the jury returns a general verdict
of Aguilty@ and the evidence
is sufficient to support the finding under any of the allegations submitted,
the verdict will be upheld.  Fuller v. State, 827 S.W.2d 919, 931 (Tex.
Crim. App. 1992).  Appellant contends that the evidence is insufficient to
support his conviction either as a principal actor or as a party to the
offense.  

There is no dispute that the gun used by appellant was not
the gun that actually killed Montes.  Thus, the inquiry in this case is whether
the evidence is legally and factually sufficient to establish that appellant
was a party to the offense.  If we conclude that it is, appellant=s conviction will
stand.  See Davis v. State, 195 S.W.3d 311, 319, n.4 (Tex. App.CHouston [14th
Dist.] 2006, no pet.) (concluding that if the court finds the evidence to be
sufficient under one particular theory, it need not address appellant=s remaining points
to determine whether the evidence is also sufficient under the other theories).

A person commits an offense if he: (1) intentionally or
knowingly causes the death of an individual; (2) intends to cause serious
bodily injury and commits an act clearly dangerous to human life that causes
the death of an individual; or (3) commits or attempts to commit a felony,
other than manslaughter, and in the course or and in furtherance of the
commission or attempt, or in immediate flight from the commission or attempt,
he commits or attempts to commit an act clearly dangerous to human life that
causes the death of an individual.  Tex.
Pen. Code Ann. ' 19.02(b) (Vernon 2003).  The specific
intent to kill may be inferred from the use of a deadly weapon.  Flanagan v.
State, 675 S.W.2d 734, 744 (Tex. Crim. App. 1984) (op. on reh=g).  A firearm is
a deadly weapon.  See Tex. Pen.
Code Ann. ' 1.07(a)(17)(A) (Vernon 1994).  A person
acts intentionally with respect to the result of his conduct when it is his
conscious objective or desire to cause the result.  Id. ' 6.03(a).  A
person acts knowingly with respect to the result of his conduct when he is
aware his conduct is reasonably certain to cause the result.  Id. ' 6.03(b).   A jury
may infer intent from the acts and words of the defendant, the manner in which
the offense was committed, the nature of the wounds inflicted, and the relative
size and strength of the parties.  Patrick v. State, 906 S.W.2d 481, 487
(Tex. Crim. App. 1995). 








A person is criminally responsible as a party to an offense
if the offense is committed by his own conduct, by the conduct of another for
which he is criminally responsible, or by both.@  Tex. Pen. Code Ann. ' 7.01(a) (Vernon
2003).  AA person is
criminally responsible for an offense committed by the conduct of another if .
. . acting with intent to promote or assist the commission of the offense, he
solicits, encourages, directs, aids, or attempts to aid the other person to
commit the offense.@  Id. ' 7.02(a)(2). 

When a party is not the Aprimary actor,@ the State must
prove conduct constituting an offense plus an act by the defendant done with
the intent to promote or assist such conduct. Beier v. State, 687 S.W.2d
2, 3 (Tex. Crim. App. 1985).  Evidence is sufficient to sustain a conviction
under the law of parties if it shows that the defendant was physically present
at the commission of the offense and encouraged the commission of the offense
either by words or other agreement.  Cordova v. State, 698 S.W.2d 107,
111 (Tex. Crim. App. 1985). 

An agreement among parties to act together in common design
can seldom be proven by words. Consequently, the State often must rely on the
actions of the parties, shown by direct or circumstantial evidence, to
establish an understanding or a common design to commit the offense.  Miller
v. State, 83 S.W.3d 308, 314 (Tex. App.CAustin 2002, pet.
ref=d).  The
agreement, if any, must be made before or contemporaneous with the criminal
event, but in determining whether one has participated in an offense, the court
may examine the events occurring before, during and after the commission of the
offense.  Id.  Circumstantial evidence may suffice to show that one is a
party to an offense.  Wygal v. State, 555 S.W.2d 465, 469 (Tex. Crim.
App. 1977).  Though mere presence at the scene is not enough to sustain a
conviction, such facts may be considered in determining whether an appellant
was a party to the offense.  Valdez v. State, 623 S.W.2d 317, 321 (Tex.
Crim. App. 1979) (op. on reh=g); Scott v. State, 946 S.W.2d 166,
168 (Tex. App.CAustin 1997, pet. ref=d). 








 The evidence in the record shows that appellant=s role in the
offense went far beyond mere presence at the scene.  Lysette Alecio, appellant=s girlfriend and
the mother of his children, testified that on the evening of the murder, they
went to Raymond Duran=s home.  While she stayed in the vehicle,
appellant went inside for about five minutes.  Appellant then returned to the
vehicle and drove toward her home.  Aguilera and Duran followed them.  Around
11:30 p.m., Duran, Aguilera, and appellant left Lysette=s home.  Although
Lysette did not know where they went, the evidence shows that appellant and
Duran fired their guns at a group of people at a barbeque, killing Montes.

An autopsy of Montes=s body revealed
that he suffered a gunshot wound to the right side of his chest.  The bullet
penetrated through his right lung, heart, liver, and his left lung.  A bullet
was found in Montes=s clothing near his left armpit.  In
addition, a .45 caliber shell casing was found near a vehicle parked in Wood=s driveway.  A
bullet fragment and some shotgun wadding was recovered from Wood=s truck.

Appellant admitted to owning the shotgun found inside the
vehicle involved in the drive-by shooting.  Appellant also admitted to being in
the vehicle at the time of the shooting.  Appellant was found hiding in a trash
can near the location where the vehicle was abandoned.  Though flight alone is
not enough to sustain a conviction, the fact may be considered. Valdez, 623
S.W.2d at 321.  








The evidence supports the reasonable inference that
appellant knew that his firing of his weapon in the general direction of a
group of people, including Montes, was reasonably certain to result in a
death.  See Flanagan, 675 S.W.2d at 736 (concluding intent to kill was
established by evidence that defendant picked up a gun in the backseat, leaned
out the vehicle=s window and shot the weapon at the pickup
truck behind him); Rojas v. State, 171 S.W.3d 442, 447 (Tex. App.CHouston [14th
Dist.] 2005, pet. ref=d) (holding evidence sufficient to prove
appellant intended for someone to die when he shot his weapon in the general
direction of a group of people including a four-year-old).  Even if appellant=s own weapon did
not directly cause the death of the complainant, the evidence supports the
finding that appellant was guilty as a party to the offense.  See Cain v.
State, 976 S.W.2d 228, 234 (Tex. App.CSan Antonio 1998,
no pet.) (finding defendant guilty under law of the parties and stating that Athe fortuity that
only a bullet from the defendant=s partner struck
the victim, and the fact that the defendant was a poor marksman does not
absolve the defendant of criminal responsibility@). 

 A rational jury could find that appellant was acting in
concert with the others in the vehicle and that the individuals in the vehicle
were acting together to intentionally and knowingly caused the death of
someone, or that they intended serious bodily injury and caused death by an act
clearly dangerous to human life, namely shooting into a crowd of people.   See
Hoang v. State, __S.W.3d.__, No. 01-04-01139-CR, 2006 WL 1228655, at *4B6 (Tex. App.CHouston [1st
Dist.] May 4, 2006, pet. ref=d) (concluding that evidence was
sufficient to support conviction for murder as party to offense when defendant
assisted shooter by giving him a firearm, drove the shooter parallel to the
victim=s car, and hid all
evidence of the crime); Hernandez v. State, 198 S.W.3d 257, 266B67 (Tex. App.CSan Antonio 2006,
pet. ref=d) (finding
evidence sufficient to establish that defendant was a party when defendant knew
that physical force would be used, ignored the victim=s screams while
assuming the role of a lookout, helping dispose of the body, and discard other evidence
of the crime).  Because a rational trier of fact could find the essential
elements of murder beyond a reasonable doubt, there is legally sufficient
evidence to support the verdict.   








In support of his factual-sufficiency challenge, appellant
asserts that evidence does not show that he acted with the intent to cause
death, or for any other party with him to cause the death of the complainant. 
We view all of the evidence in a neutral light. Watson, 204 S.W.3d at
414.  Appellant directs us to his statement given to Sergeant Ramsey in
which he expressed anger and his desire to frighten the guests at the barbeque,
but never intended to kill anyone.  Appellant contends that he fired either in
the air or away from where the people were standing.  Thus, he contends that he
did not anticipate that the complainant, or any other individual, would be shot
and killed.  The jury, as fact-finder, was free to disbelieve this evidence,
and believe the overwhelming amount of evidence supporting the conviction.  Cain,
958 S.W.2d at 407.  This evidence includes the following:  (1) appellant
went to Duran=s home earlier in the evening to have some Adiscussion@; (2) he left his
girlfriend=s home with Duran and Aguilera around 11:30 p.m.; (3)
he was in the vehicle at the time of the shooting; (4) he owned the shotgun
found in the vehicle; (5) he was found hiding in a trash can in a location near
the abandoned vehicle; and (6) he had fresh gun residue on his hands.   A
participant in the drive-by shooting, appellant fired a weapon into a crowd of
people while he was a passenger in the vehicle.  The victims were standing in
plain sight in the yard and appellant fired his weapon directly at them.  At
the very least, appellant is guilty as a party to the shooting of the
complainant.  See Patterson v. State, 950 S.W.2d 196, 202 (Tex. App.CDallas 1997, pet.
ref=d) (concluding
that evidence was factually sufficient to support murder conviction of
defendant, who, along with another person, shot at an automobile in which the
victim was riding); Garcia v. State, 827 S.W.2d 25, 26B27 (Tex. App.CCorpus Christi
1992, no pet.) (finding murder conviction sufficiently supported by the
evidence that the defendant had personally stabbed the victim even though the
evidence was conflicting as to which of three suspects involved was the actual
stabber); Polk v. State, 710 S.W.2d 610, 611 (Tex. App.CDallas 1986, pet.
ref=d) (concluding
that the evidence at a minmum shows that the defendant was a party to the
offense without proof of whether he actually pulled the trigger).[5] 
Because the verdict is not against the great weight and preponderance of the
evidence and is not clearly wrong or unjust, the evidence is factually
sufficient to support the murder conviction.  








Having found no merit in appellant=s challenges to
the legal and factual sufficiency of the evidence, we overrule appellant=s remaining issues
two through seven. 

We affirm the trial court=s judgment. 

 

 

 

/s/      Kem Thompson Frost

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed January 23, 2007.

Panel consists of
Justices Frost, Seymore, and Guzman.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  We note that section 51.095 is the current section
governing the admissibility of the statement of a child.





[2]   Section 52.025 provides as follows: 

 

(a) The juvenile board may designate an office or a
room, which may be located in a police facility or sheriff's offices, as the
juvenile processing office for the temporary detention of a child taken into
custody under Section 52.01. The office may not be a cell or holding facility
used for detentions other than detentions under this section.  The juvenile
board by written order may prescribe the conditions of the designation and
limit the activities that may occur in the office during the temporary detention.

 

(b) A child may be detained in a juvenile processing
office only for:

 

(1) the return of the child to the custody of a person
under Section 52.02(a)(1);

(2) the completion of essential forms and records
required by the juvenile court or this title;

(3) the photographing and fingerprinting of the child
if otherwise authorized at the time of temporary detention by this title;

(4) the issuance of warnings to the child as required
or permitted by this title; or

(5) the receipt of a statement by the child under
Section 51.095(a)(1), (2), (3), or (5).

 

(c) A child may not be left unattended in a juvenile
processing office and is entitled to be accompanied by the child's parent,
guardian, or other custodian or by the child's attorney.

 

(d) A child may not be detained in a juvenile
processing office for longer than six hours.

 

Tex. Fam. Code Ann. ' 52.025 (Vernon
Supp. 2006).





[3]  In Baptist, the Court of Criminal Appeals
considered whether section 52.02(a) was violated when the officer  took the
juvenile to a magistrate and then directly to the homicide division  in the
Houston Police Department.  993 S.W.2d at 655.  The high court concluded that
because the homicide division was not a juvenile processing center and did not
satisfy any of the other statutory options in section 52.02(a), the statement
taken was inadmissible.  Id; see also Gonzales v. State, 67 S.W.3d 910,
912B13 (Tex. Crim. App. 2002).   





[4]  Because appellant=s
issues two through seven are similar and require the same analysis, we address
them together. 





[5]  Murder is a Aresult of conduct@ offense. Cook v. State, 884
S.W.2d 485, 490 (Tex. Crim. App. 1994).  A person commits the offense of murder
if he intends to cause serious bodily injury and commits an act clearly
dangerous to human life that causes the death of an individual. Tex. Pen. Code ann. ' 19.02(b)(2) (Vernon 2003). A
person is nevertheless criminally responsible for causing a result if the only
difference between what actually occurred and what he desired, contemplated, or
risked is that:  (1) a different offense was committed; or (2) a different
person or property was injured, harmed, or otherwise affected. Tex. Pen. Code ann. ' 6.04(b)(2) (Vernon 2003).  Under
the statute, a defendant can be held Acriminally responsible,@ that is, guilty for the death of another even if he did
not intend to harm the victim, so long as he caused the actual victim=s death while acting with the
intent to kill a different person. Chimney v. State, 6 S.W.3d 681, 700
(Tex. App.CWaco 1999, pet. ref=d).  Thus, even if appellant did
not intend to kill anyone or intended to kill another person, he would not be
absolved of criminal responsibility.  Id.