**Opinion issued March 21, 2024**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-22-00810-CR

_____

**YOJAN SANTIAGO HERNANDEZ MAGUEYAL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 239th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 92403-CR**

---

## MEMORANDUM OPINION

Appellant Yojan Santiago Hernandez Magueyal was found guilty of murder and sentenced to 53 years' confinement. Magueyal raises two issues on appeal, that the statement he made to police should not have been admitted, and that the

remaining evidence was insufficient to convict him of murder. Because any error admitting the statement was harmless, we affirm.

**Background**

In June 2020, Sutton had scheduled a date with M. Reding, who he met on a website called Secret Benefits. Reding, her boyfriend A. Hinojosa, and Magueyal planned to rob Sutton during the date. Hinojosa drove them to Sutton's home where Reding distracted Sutton by taking drugs with him while Hinojosa and Magueyal broke in. After entering Sutton's home, Magueyal shot him in the leg. They tied Sutton up and stole his truck, his guns, and other items.

Later, Sutton's roommate returned home from work and found Sutton lying against the kitchen wall, bleeding. Sutton's roommate called 911 and law enforcement responded and secured the scene. Sutton died from blood loss caused by the gunshot wound. Investigator H. Goolsby processed the scene, recovering a .223 shell casing in Sutton's home. The casing was later determined to have been fired from Magueyal's firearm. Goolsby also discovered a box of Spartan shotgun shells in a bedroom in Sutton's home, which were also found in Reding's car and Magueyal's bedroom.

Investigator J. Wolfe obtained a search warrant for Sutton's phone, which led him to Reding. A search of Reding's car uncovered her phone and items from Sutton's home. Reding's phone contained texts between her and Sutton showing that

2

she had set up a date with him. There were also photos of Magueyal and Hinojosa with guns in front of Reding's car and an Instagram post from Hinojosa about being "the ones that put that boy on the news," as well as a picture of Sutton's truck. There was also a text that Reding had sent to her sister which had a photo of Sutton's truck with the message "Fuck no, he got a truck." Reding confessed to law enforcement and testified at trial about the contents of her phone and the details of the robbery and murder.

Law enforcement also obtained a search warrant for Magueyal's home. During the search, everyone in the home, including Magueyal, was handcuffed. In Magueyal's room they found the murder weapon, a jar from Sutton's home, .223 ammunition, Spartan shotgun shells, and two other firearms.

During the search, Investigator A. Kerstens approached Magueyal while Magueyal was handcuffed alongside his family members, and asked if Magueyal would like to speak with him, to which Magueyal replied, "Yes." Magueyal was then interrogated for about 79 minutes in a bedroom with the door closed. Before starting the interrogation, Investigator Kerstens set up audio recording devices, removed Magueyal's handcuffs, told him that he was not under arrest, he was free to leave at any time, and that "[Magueyal] could go off at any time." Magueyal confirmed that he understood and that he knew this was "procedure." Investigator Kerstens then confirmed that Magueyal had recently just turned 16 years old and told him that he

3

believed "some adults got [Magueyal] into something." Magueyal confirmed that he knew Reding and Hinojosa, but said they had a falling out and had not seen them since July.

But Investigator Kerstens pushed Magueyal to give him more information, stating, "you know about [the robbery], I know you know about it." Magueyal denied any knowledge of it. Magueyal also denied owning any firearms, but he later admitted that he bought a silencer from Hinojosa and the murder weapon from another friend. Magueyal asserted that he had never fired any weapons but had at times held them during drug deals he did with Hinojosa. Throughout the interrogation, Magueyal denied any knowledge of the robbery other than that Hinojosa was trying to sell an engine at some point. But Investigator Kerstens confronted Magueyal with Reding's statement that he was with her and Hinojosa during the robbery and murder. Magueyal explained that it must be because of the falling out he had with Hinojosa. Near the end of the interrogation, Magueyal stated that he would let Investigator Kerstens know if he learned any information about Hinojosa, and the interrogation ended shortly after.

A search warrant was obtained for Magueyal's cellphone, and location data revealed that it was near Sutton's home on the night of the murder. A video on Magueyal's phone had his voice on it and showed several items stolen from Sutton's home. There were also photos of the firearms stolen from Sutton's home, as well as

4

the murder weapon, all taken hours after the murder. The day after the murder, Magueyal and Hinojosa posed for more pictures with the stolen guns.

A text conversation between Magueyal and Hinojosa showed them discussing splitting the profits from the robbery. Another text chain from July 2020 showed Magueyal arguing with Hinojosa over items from the robbery. Magueyal states, "[I] did the fucken dirt . . . U got more out of it then me" to which Hinojosa responds, "U ain't have to do shit . . . It was my lick . . . U said u wanted to pop em not me."

Magueyal, who was a juvenile at the time of the murder, was certified to stand trial as an adult and charged with Sutton's murder. At trial, Magueyal moved to suppress his statement to Investigator Kerstens, but the trial court denied his motion. No fingerprints or DNA matching Magueyal's was found at Sutton's home or Reding's car, the murder weapon was not tested, and Magueyal did not testify at trial. The jury found Magueyal guilty and sentenced him to 53 years' confinement.

## Motion to Suppress

### A.    Standard of Review

We review a trial court's denial of a motion to suppress for an abuse of discretion under a bifurcated standard. *See Wexler v. State*, 625 S.W.3d 162, 167 (Tex. Crim. App. 2021); *Roquemore v. State*, 11 S.W.3d 395, 398 (Tex. App.— Houston [1st Dist.] 2000) (op. on reh'g) ("[i]ssues concerning a juvenile's confession, although raised in a criminal forum, are controlled by the Family

5

Code."). When the police obtain a confession from a juvenile before a magistrate has read him his rights, an appellate court evaluates whether the juvenile was in custody by (1) examining the factual circumstances surrounding the interrogation, and (2) making a legal determination about whether a reasonable person would have felt free to terminate the encounter and leave. *See In re J.J.*, 651 S.W.3d 385, 389 (Tex. App.—Houston [1st Dist.] 2022, pet. denied) (en banc) (citing *State v. Saenz*, 411 S.W.3d 488, 493 (Tex. Crim. App. 2013)). An appellate court gives almost total deference to the trial court's assessments of historical fact and conclusions that turn on credibility, but we review de novo mixed questions of law and fact that do not turn on credibility, such as the legal determination of whether the juvenile was in custody when he confessed. *Id.* at 389–90.

Because the trial court denied the motion to suppress without any findings of fact, we view the evidence in the light most favorable to the ruling and assume the trial court made implicit findings of fact that support its ruling if those findings are supported by the record. *Wexler*, 625 S.W.3d at 167. We will uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case. *State v. Iduarte*, 268 S.W.3d 544, 548 (Tex. Crim. App. 2008).

**B.     Harm Analysis**

Assuming, without deciding, the trial court erred when it admitted Magueyal's statement, we review the alleged error for harm. In a criminal case, the erroneous

denial of a motion to suppress a statement taken in violation of *Miranda*[1] is constitutional error subject to review under the standard in Texas Rule of Appellate Procedure 44.2(a). *See* TEX. R. APP. P. 44.2(a). Under Rule 44.2(a), "[i]f the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." *Id.*

The emphasis of the harm analysis is not whether the evidence supported the verdict. *Scott v. State*, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007). "Instead, the question is the likelihood that the constitutional error was actually a contributing factor in the jury's deliberations in arriving at that verdict." *Id.* In determining this, we may consider (1) whether the statement was cumulative of other evidence, (2) the importance of the statement to the State's case, (3) the probable weight a juror would place upon the statement, (4) the existence of evidence corroborating or contradicting the statement on material points, and (5) the overall strength of the State's case. *See id.*; *Jones v. State*, 119 S.W.3d 766, 777–78 (Tex. Crim. App. 2003). After considering these factors, the reviewing court must be able to declare, beyond a reasonable doubt, "that the error did not contribute to the conviction" before it can affirm it. *Scott*, 227 S.W.3d at 690–91.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

The State offered testimony from a co-conspirator, as well as incriminating photos, texts, cell phone location data, video, and physical evidence:

- Reding testified that she knew Magueyal through his friendship with Hinojosa;

- Reding testified that Magueyal participated in the robbery and murder;

- Reding testified that Magueyal shot Sutton with a large firearm;

- A photo of Magueyal and Hinojosa with guns in front of Reding's car;

- An Instagram post from Hinojosa including the photo of Magueyal and Hinojosa posing with guns in front of Reding's car with the caption "[w]e the ones that put that boy on the news . . . .";

- A .223 shell casing found in Sutton's home determined to have been fired from Magueyal's .300 blackout.

- A box of Spartan shotgun shells in Sutton's home, some of which were also found in Reding's vehicle and Magueyal's room;

- The murder weapon was found in Magueyal's bedroom;

- An empty jar from Sutton's home was found in Magueyal's bedroom;

- .223 ammunition was found in Magueyal's bedroom;

- Magueyal's cellphone location data revealed he was near Sutton's home on the night of the murder;

- Magueyal's cellphone contained a video that had his voice on it and showed several items stolen from Sutton's home;

- Magueyal's cellphone contained photos of stolen firearms from Sutton's home and of Magueyal and Hinojosa posing with them;

- Magueyal's cellphone contained photos of the murder weapon taken shortly after the murder;

- Text messages between Magueyal and Hinojosa discussing stolen items from Sutton's home and splitting the profits from the robbery;

- Text messages between Magueyal and Hinojosa arguing over items from the robbery including a text from Magueyal to Hinojosa stating, "I did the fucken dirt . . . U got more out of it then me."

Magueyal's statement to law enforcement denied his involvement and confirmed information obtained from his phone:

- Magueyal knew Reding and Hinojosa;

- Magueyal denied having seen Reding or Hinojosa since July;

- Magueyal denied involvement in the robbery;

- Magueyal denied having ever shot a firearm; and

- Magueyal admitted owning the murder weapon.

### 1. Whether the statement was cumulative

Magueyal's statement contained little cumulative evidence. This is in part because his statement contains little information relevant to the robbery and murder. Much of the interrogation is spent discussing dog ownership, working, hunting, and gun ownership generally. Magueyal's statement also included denials that Magueyal took part in the robbery and murder, that he knew Reding and Hinojosa, and that he owned the murder weapon. Magueyal's statement about his relationship with Reding and Hinojosa was cumulative evidence because it went toward establishing a

relationship between the three robbers, which Reding also testified to. As for ownership of the firearm, while not cumulative, it is merely circumstantial evidence that Magueyal participated in the murder. The ownership of the murder weapon ties Magueyal to the murder no more than his possession of it does. And his possession was established through law enforcement's search of his bedroom, not through his statement.

2. **The importance of the statement to the State's case and strength of the case**

The State presented overwhelming evidence outside of Magueyal's statement. Reding's testimony implicated Magueyal as an active participant in the robbery and as the shooter. Magueyal's cellphone location data put him near the location of the murder when the robbery and murder occurred. Magueyal's cellphone also contained photos of him posing with items stolen from Sutton's home and photos of the murder weapon. It also had text messages from Magueyal to Hinojosa discussing the robbery, arguing over how to split the stolen items, and Magueyal's admission that he "did the fucken dirt." The search of Magueyal's bedroom also uncovered the murder weapon and multiple stolen items from Sutton's home. Additionally, the State's closing arguments only referred to Magueyal's interrogation once, stating, "He lied to you about having guns . . . . He eventually admitted to having [the] murder weapon . . . . before the offense had occurred." Magueyal's statement was unimportant to the State's case because the State relied heavily on other evidence

10

and did not emphasize the statement. *Compare Scott*, 227 S.W.3d at 694 (nearly entire jury argument constituted intensive debate between the parties about corroboration of defendant's improperly admitted statement), *with Heath v. State*, No. 01-19-00794-CR, 2021 WL 4095243, at *5 (Tex. App.—Houston [1st Dist.] Sept. 9, 2021, pet. ref'd) (any error was harmless, in part, because challenged cellphone report was not emphasized by State, State did not ask witnesses about the contents of it, and it was not a critical piece of evidence connecting defendant to crime).

### 3. The probable weight a juror would place on the statement

The statement likely held little weight with the jury. Magueyal did not confess. He never admitted any involvement in the robbery or murder. Throughout the interrogation, Magueyal was consistent. Even when Investigator Kerstens confronted him and told him that others had implicated him, he denied involvement. While the jury did request to review his statement during its determination of guilt, the only unique information in the statement was that Magueyal admitted owning the murder weapon. But ownership of the murder weapon does not directly show that Magueyal committed the murder. Moreover, there was other more significant circumstantial evidence supporting the verdict, such as Reding testifying that Magueyal was the shooter, and photos on Magueyal's cellphone of stolen items from Sutton's home and of the murder weapon.

And most importantly, there was evidence of Magueyal arguing with Hinojosa over the profits from the crime where Magueyal stated, "I did the fucken dirt . . . U got more out of it then me" and Hinojosa responded, "U ain't have to do shit . . . It was my lick . . . U said u wanted to pop em not me." Because of the significant amount of other inculpatory evidence, the statement likely held little to no weight with the jury on a material issue. *See Jones*, 119 S.W.3d at 777 (error is harmless unless reasonable likelihood it materially affected jury's deliberations).

### 4. The existence of evidence corroborating or contradicting the statement

First, Magueyal's ownership of the murder weapon was corroborated by photos and where the weapon was found. Second, Magueyal's relationship with Reding and Hinojosa was corroborated by Reding's testimony and Magueyal's text messages. Finally, Magueyal's denial of being in contact with Reding and Hinojosa and his denial of involvement in the robbery and murder were contradicted by Reding's testimony, Magueyal's text messages, and Sutton's stolen items recovered from Magueyal's home.

To reach its verdict, the jury must have disbelieved Magueyal's denials to Investigator Kerstens and given more weight to the other evidence implicating Magueyal. *See Foyt v. State*, 602 S.W.3d 23, 45 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) ("although appellant's falsehoods tend to incriminate him," error in admitting statements was harmless given other evidence); *Watson v. State*, No. 01-

21-00281-CR, 2023 WL 4239869, at *8 (Tex. App.—Houston [1st Dist.] June 29, 2023, pet. ref'd) (mem. op., not designated for publication) (admission of statement was harmless error where jury disbelieved appellant's denial of involvement in murder); *but see Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) (falsehoods can be probative of guilt). Considering the evidence, the statement's lack of importance to the State's case, and the likely weight a jury would place on the statement favor our conclusion that any error in denying the motion to suppress was harmless because admitting Magueyal's statement did not affect the integrity of the trial. *See Jones*, 119 S.W.3d at 782; *see Scott*, 227 S.W.3d at 690 (reviewing court must be satisfied to level of confidence beyond a reasonable doubt, that error did not contribute to conviction to conclude that error was harmless).

We overrule Magueyal's first issue. Accordingly, we need not address his remaining argument. *See* TEX. R. APP. P. 47.1.

## Conclusion

We affirm the trial court's judgment.


Sarah Beth Landau
Justice

Panel consists of Chief Justice Adams and Justices Landau and Rivas-Molloy.

Do not publish. TEX. R. APP. P. 47.2(b).

13